### E. D. BROWN v. STATE.

No. A-9863. Aug. 6, 1941.

(116 P. 2d 216.)

334

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., and Phil E. Daugherty, Asst. Co. Atty., both of Oklahoma City, for the State.

Glen O. Morris, of Oklahoma City, for defendant.

BAREFOOT, P. J. Defendant, E. D. Brown, was charged in the court of common pleas of Oklahoma county with the crime of maintaining and operating a public nuisance; was tried, convicted and sentenced to pay a fine of $50 and serve 45 days in the county jail, and has appealed.

The statute upon which this prosecution was based, Oklahoma Statutes 1931, section 2616, O. S. A. Title 37, sec. 73, is as follows:

"All places where spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; or any malt liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one percentum of alcohol, measured by volume, and which is capable of being used as a beverage * * * is manufactured, sold, bartered, given away or otherwise furnished in violation of any provision of this act; and all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances * * * and the owner

or keeper thereof shall, upon conviction, be adjudged guilty of maintaining a public nuisance, and shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and by imprisonment in the county jail not less than thirty days nor more than six months. * * *"

This statute was enacted on the 11th day of March, 1911, and has been construed by this court in many cases. It is contended by defendant in his brief for reversal of this cause that in order to constitute a nuisance:

"* * * It must be a place maintained or kept by the defendant where he manufactures, sells, barters, gives away or otherwise furnishes intoxicating liquor in violation of the provisions of the prohibitory liquor law, or a place where any such liquor is kept or possessed by any person in violation of any provision of the prohibitory liquor law, or be a place where persons congregate or resort for the purpose of drinking any such liquor."

Defendant then argues under this proposition that the Legislature did not intend to bring persons under this statute where other persons brought liquor into a defendant's place of business and drank the same "against the rules and regulations and unbeknown to the operator of said place." It is further argued:

"* * * It is incumbent upon the state to prove that the place was a place where intoxicating liquor was kept, bartered, sold or given away by defendant, being the keeper or operator of said place, or that the same was being bartered, sold, given away or otherwise furnished to persons with his knowledge or acquiescence therein."

Even if defendant's argument is true, we are of the opinion that the facts in this case present just such a state of facts under which it is argued that the defendant would be guilty as charged under this statute. As authority for this contention defendant cites the case of Simpson v. City of Tulsa, 67 Okla. Cr. 224, 93 P. 2d 539. We have read this case and find that it involves a charge of unlawful

and reckless driving of an automobile on the streets of the city of Tulsa, and has application only in general principles to the facts in the instant case.

As above stated, the facts as revealed in the case at bar were that the defendant, E. D. Brown, was operating a beer parlor and dance hall in a certain location, a "one story frame building located 6001 South Shields," etc. That he had been operating the same for a period of eight years, and it was being conducted as what is known as a night club. This place was raided by the officers of Oklahoma county on the night of November 4, 1939, by six deputy sheriffs. The evidence of the state is principally the evidence of these officers  Their evidence was practically the same, and we shall refer to it together. They testified that defendant had operated the place for many years; that he owned the building adjoining it in which was located an auto service station, and that defendant had rented it to a man by the name of Townsend; that the door into this station was only about six feet from one of the entrances to defendant's place of business; that this service station had been raided by the officers many times and liquor had been found there, and on this occasion 200 or 300 pints had been found. There was also testimony by the officers that whisky was brought from this filling station to defendant's place of business upon order. The officers also testified that they had raided defendant's place on many occasions and had visited it on many more; that they had frequently seen minors there drinking beer in the presence of the defendant and had seen other persons there drinking whisky, and on several occasions they had seen the young lady who worked for defendant run and pour out whisky on their approach; that they had frequently warned and notified defendant that unless he cleaned up his place and quit selling beer to minors they would file

charges against him; that there was a bar and glasses in the place of business and also booths as are usually used in night clubs of this character.

On the night of November 4, 1939, they had seen the orchestra leader drinking whisky out of a bottle in one of the booths, and that he was arrested and charges were filed against him which were afterwards dismissed by the justice of the peace when the witnesses did not appear. They were never subpoenaed. These officers also testified that defendant was present on many occasions when they saw minors drinking beer upon the premises, and that he saw them; that they were young school boys. On one occasion several young boys from Britton highschool were found on the premises with a quart bottle of liquor. It was poured out by the officers. Their names were taken by the officers, and they were arrested but not prosecuted. They were not called upon to testify in this case. The assistant county attorney should have ascertained their names and had them present as witnesses. They claimed to have bought the liquor from Mr. Townsend who rented the service station from defendant.

The officers, after testifying to the above facts and others, each testified that they were acquainted with the general reputation of defendant's place, and that it had the general reputation of being a place where intoxicating liquor was being sold and consumed on the premises. The evidence also revealed that defendant's license to sell beer had been vacated on hearing.

From the above statement it can be readily seen the evidence was sufficient to justify the court in finding the defendant guilty of operating a public nuisance under the statute above quoted. See the following cases: Fonville v. State, 37 Okla. Cr. 1, 255 P. 591; Faulk v. State, 34 Okla. Cr. 431, 247 P. 112; Williams v. State, 55 Okla.

Cr. 385, 30 P. 2d 932; Musgrove v. State, 55 Okla. Cr. 230, 28 P. 2d 584; Hilbert v. State, 44 Okla. Cr. 89, 279 P. 910; Blanton v. State, 38 Okla. Cr. 149, 259 P. 655.

This case was tried before the court without the intervention of a jury, and the finding of facts is the same as if passed upon by a jury.

It is further contended: "* * * that the court erred in allowing the county attorney to attempt to prove the general reputation of defendant's place by officers and officers alone."

To sustain this contention the case of Small v. State, 21 Okla. Cr. 99, 210 P. 317, is cited. This case is in no way in conflict with the decisions of this court upon the question of proving the reputation of one's place of business where he is charged with conducting a public nuisance under the statute. From the earliest days of this court and after the enactment of the statute above quoted, it has been held that, where one is charged with conducting a public nuisance or with the unlawful possession of intoxicating liquor and at a place of public resort, one knowing the general reputation of said place, as being a place where intoxicating liquor is being sold in violation of the laws of this state, has the right to so testify, and we know of no law that prohibits officers of the law from testifying to this fact the same as any other person. The officers testified in this case that they had this personal knowledge; that many people in the community had talked to them and had telephoned to them with reference to this identical place, and that this reputation was a general reputation and was not based alone upon individual raids made by them. This court has often held that, where a person is charged with the sale of intoxicating liquor or with illegally conveying intoxicating liquor, this is a specific charge and that proof that the individual is a bootlegger or has

the reputation of being one who engages in the illegal sale of intoxicating liquor is inadmissible. The one refers to the reputation of the place, the other to the person. The one is admissible, the other is inadmissible. Frazier v. State, 31 Okla. Cr. 324, 239 P. 185; Ward v. State, 15 Okla. Cr. 150, 175 P. 557; Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120; Kirk v. State, 11 Okla. Cr. 203, 145 P. 307; Jones v. State, 55 Okla. Cr. 134, 26 P. 2d 435; Thomas v. State, 64 Okla. Cr. 265, 79 P. 2d 625.

From the above statement it is our opinion that the court did not error in finding the defendant guilty under the evidence in this case. The judgment of the court of common pleas of Oklahoma county is therefore affirmed.

JONES, J., concurs. DOYLE, J., absent.